# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CRIMINAL ACTION NO. 1:19-CR-00049-GNS

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.

JIMMY BARNETT                                                                                             DEFENDANT

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Jimmy Barnett's Appeal of the Magistrate Judge's Decision (DN 2). Defendant's appeal is now ripe for adjudication. For the reasons that follow, the judgment of the Magistrate Judge is **AFFIRMED**.

### I.     **BACKGROUND**

Under 36 C.F.R. § 2.16(c), federal law prohibits "[t]he use of horses . . . on a park road, except: (1) Where such travel is necessary to cross to or from designated trails, or areas, or privately owned property, and no alternative trails or routes have been designated; or (2) when the road has been closed to motor vehicles." On May 4, 2019, a park ranger patrolling within Mammoth Cave National Park observed Defendant Jimmy Barnett ("Barnett") riding a horse on Houchin's Ferry Road. (Appeal Magistrate Judge Decision Ex. 1 [hereinafter "Mem. Op. & Order"] 1-2, DN 2-1). Houchin's Ferry Road is a park road not designated for horseback use, and signs at both ends of the road near horse trailheads advise "no horses beyond this point." (Mem. Op. & Order 2). The park ranger cited Barnett for a violation of Section 2.16(c). (Appellant's Br. 4 n.5, DN 6; Appellee's Br. 3 n.3, DN 7).

Before the Magistrate Judge and before this Court, Barnett makes only one argument—that he cannot be prosecuted for a violation of Section 2.16(c) because of a limiting condition in

1

the order of condemnation and deed by which the United States obtained ownership of Houchin's Ferry Road in 1945 and which requires the road remain open for the "usual use by the public." (Mem. Op. & Order 2; Appellant's Br. 1-2). Barnett's argument can be summed up as follows:

> Barnett . . . challenges his citation for riding a horse on Houchin Ferry Road in violation of the federal regulation. He does not dispute the federal government's power to regulate its property, nor the federal regulation's facial validity. Rather, he argues that the regulation cannot be applied to his conduct — riding a horse on Houchin Ferry Road — without violating the express limit on the government's ownership of the road (contained in the condemnation judgment and deed), because his conduct was a "usual use [by] the public."

(Appellant's Br. 1-2). In other words, Barnett's only argument here is that he possesses an unfettered right to travel by horseback on Houchin's Ferry Road, what Barnett argues is a "usual use" of that road at the time the road was conveyed to the United States, because the limiting condition in the order of condemnation and deed granting ownership of the road to the United States reserves that right to the public, notwithstanding application of Section 2.16(c).

After the filing of pleadings and exhibits and the parties' oral argument, the Magistrate Judge found Barnett guilty of violating Section 2.16(c) and fined Barnett $100. (Mem. Op. & Order 1, 10). The Magistrate Judge found that the phrase "usual use" in the judgment and deed "is directed to the purpose of travel and not the means whereby it is accomplished." (Mem. Op. & Order 8). In other words, the Magistrate Judge rejected Barnett's argument, finding that the limiting condition did not reserve a specific mode of travel but rather the general activity of travel on the road. Barnett has appealed the Magistrate Judge's judgment to this Court. (Notice Appeal 1, DN 2).

## II.     JURISDICTION

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402.

## III.     STANDARD OF REVIEW

"A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge . . . ." Fed. R. Crim. P. 58(g)(2)(B). "The scope of the appeal is the same as an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). On appeal from a magistrate judge's judgment entered after a bench trial, a district court reviews the magistrate judge's legal determinations de novo and factual findings for clear error. *United States v. Evans*, 581 F.3d 333, 338 n.4 (6th Cir. 2009).

## IV.     DISCUSSION

As an initial matter, the United States challenges Barnett's ability to even assert that Section 2.16(c) is invalid as applied to Barnett. (Appellee's Br. 4-7). The United States points to the Tenth Circuit's decision in *United States v. Wells*, 873 F.3d 1241 (10th Cir. 2017), for the proposition that if a criminal defendant seeks to establish a right-of-way defense to a criminal charge, he must establish that right through an action under the Quiet Title Act, 28 U.S.C. § 2409a. (Appellee's Br. 5-6). "The purpose of the Quiet Title Act is 'to determine which named party has [a] superior claim to a certain piece of property.' Congress thus permitted challenges to the United States' claim of title to real property only to parties who themselves claim an interest in title." *Friends of Panamint Valley v. Kempthorne*, 499 F. Supp. 2d 1165, 1174 (E.D. Cal. 2007) (internal citation omitted) (citation omitted).

3

Importantly, "the right of an individual to use a public road is not a right or interest in property for purposes of the Quiet Title Act." *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001) (citing *Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir. 1978)). Barnett is not asserting a property right here that concerns the Quiet Title Act; Barnett is simply asserting a right to use Houchin's Ferry Road in a certain manner. Asserting the right to travel on a public road by horseback versus by automobile or by foot is not a property interest that concerns the Quiet Title Act. Additionally, as the Court in *Wells* recognized, there is a "constitutional question of whether Defendants' . . . due process rights would be violated if they are prevented from mounting a[] . . . defense to their criminal charges." *Wells*, 873 F.3d at 1262. The United States has not addressed the due process implications of its argument that Barnett must file suit under the Quiet Title Act before asserting the defense he does in this criminal case.

Regardless of the merit, or lack thereof, of the United States' Quiet Title Act argument, its second argument, which the Magistrate Judge accepted, is correct—Barnett's interpretation of the phrase "open for the usual use by the public" is flawed. (Mem. Op. & Order 7-10; Appellee's Br. 7-10). The Magistrate Judge appropriately analyzed that phrase according to the context in which it was created, i.e., in the condemnation proceeding filed by the United States.

Mammoth Cave National Park was established on July 1, 1941. (Mem. Op. & Order 2; Appellant's Br. 3; Appellee's Br. 1). On August 11, 1942, the United States filed a Petition in Condemnation in this Court, seeking to acquire various public roadways located in three Kentucky counties that were within the confines of Mammoth Cave National Park. (Mem. Op. & Order 2; Appellee's Br. Ex. 9, at 27-35, DN 7-9). "Houchin Ferry-Mammoth Cave Road" was twice identified as one of the roads included in the condemnation action. (Mem. Op. & Order 2-3; Appellee's Br. Ex. 9, at 29). The petition specified that several of the roads, including Houchin's

Ferry Road, were to remain "open for the usual use by the public." (Mem. Op. & Order 3; Appellee's Br. Ex. 9, at 34). The petition was amended four times during the litigation to adjust the roadways subject to condemnation, but Houchin's Ferry Road remained among the roads to remain "open for the usual use by the public." (Mem. Op. & Order 3; Appellee's Br. Ex. 9, at 45).

The Court appointed a commission in the case, which set compensation at the sum of $3,673.50 for the 39 roadways subject to condemnation. (Mem. Op. & Order 3; Appellee's Br. Ex. 9, at 84). The parties took exception to the award, and in February 1945, the Court conducted a jury trial to assess the damages to be awarded to the counties. (Mem. Op. & Order 3; Appellee's Br. Ex. 9, at 84). Following a jury verdict, the Court entered a Final and Deficiency Judgment in Condemnation on or about March 2, 1945, awarding each of the landowners, i.e., various counties in Kentucky and Kentucky itself, a nominal amount for their interests. (Mem. Op. & Order 3; Appellee's Br. Ex. 9, at 84-85, 94). The judgment vested ownership of the roads in the United States "subject, however, to and conditioned upon [certain roads, including Houchin's Ferry Road] . . . remaining open for the usual use by the public." (Mem. Op. & Order 3; Appellee's Br. Ex. 9, at 93). This same condition was reflected in the deed formally conveying ownership to the United States executed subsequent to the judgment on June 18, 1945. (Mem. Op. & Order 3; Appellee's Br. Ex. 9, at 52-55).

Based on the condemnation action, the Magistrate Judge interpreted the phrase "open for the usual use by the public" to be "directed to the purpose of travel and not the means whereby it is accomplished." (Mem. Op. & Order 8). In other words, the Magistrate Judge, after a detailed examination of the entirety of the condemnation action, concluded that the phrase more generally preserved a right of access to the roads acquired by the federal government, not the right to access the roads by a specific means of locomotion. It is clear, as determined by the Magistrate Judge,

that the public does not possess an unfettered right to travel by horseback on Houchin's Ferry Road as Barnett espouses.

Completely undermining Barnett's position is the fact that a federal regulation existing in 1941 prohibited "horseback travel over automobile roads . . . except where such travel is necessary for ingress to and egress from privately owned property in the parks of monuments, or incidental to authorized trail trips."[1] (Appellee's Br. Ex. 9, at 7 (citing 36 C.F.R. § 2.36 (1938))). Accepting Barnett's contention, arguendo, that the phrase "open for the usual use by the public" in the condemnation action judgment and deed affords the public the unfettered right to travel on the entirety of Houchin's Ferry Road by horseback would lead to the nonsensical conclusion that the federal government agreed to bind itself to a condition that was in violation of federal law at the time of condemnation.[2] *See generally James v. Dravo Contracting Co.*, 302 U.S. 134, 147 (1937) ("The right of eminent domain inheres in the federal government by virtue of its sovereignty, and thus is may, regardless of the wishes either of the owners or of the states, acquire the lands which it needs within their borders. In that event, as in cases of acquisition by purchase without consent of the state, jurisdiction is dependent upon cession by the state, and the state may qualify its cession

---

[1] Barnett has admitted that travel over Houchin's Ferry Road in 1945 "was by automobiles" in addition to horseback and does not otherwise dispute characterization of Houchin's Ferry Road as an "automobile road[.]" (Appellant's Br. 5 n.7; Appellant's Br. Ex. 5, at 3, DN 6-5). Additionally, Barnett does not argue for use of Houchin's Ferry Road under the exceptions listed in the regulations, but rather the unfettered ability to travel over the road by horseback in general.

[2] Barnett relies on *Herr v. United States Forest Service*, 865 F.3d 351 (6th Cir. 2017), to support his position that the federal government can carveout a permissible use of federal government property by the public that would otherwise violate a federal regulation. The key difference between *Herr* and the case *sub judice*, however, is that the "carveout" that protected the public's use of federal government property in *Herr* was established by statute, which took precedence over a contravening federal regulation. This is unlike the purported carveout in the case at hand, which was established in a condemnation judgment and a deed of conveyance. *Id*. at 353-54.

by reservations *not inconsistent with the governmental uses*." (emphasis added) (internal citation omitted) (citations omitted)).

Although unfettered horseback travel may have been a "usual use" of Houchin's Ferry Road by the public before the federal government's acquisition of that property, that phrase cannot be interpreted to preserve the right of the public to act in a way that violated federal law in existence at the time of the acquisition. The existence of federal law prohibiting unfettered horseback travel on federally owned roads prior to and at the time of the federal government's acquisition of Houchin's Ferry Road should unquestionably inform what constitutes a "usual use" of the road. *See Franklin Fluorspar Co. v. Hosick*, 39 S.W.2d 665, 666 (Ky. 1931) ("The language of [a] deed is read under this rule: 'The construction must be reasonable and agreeable to common understanding, and the words employed in a deed should be given their fair and reasonable meaning, receiving the interpretation accorded them by the common usage of mankind, having in view the circumstances of their use and context.'" (citation omitted)). Barnett's argument assumes that the only evidence that can shed light on the meaning of the phrase "usual use" is how Houchin's Ferry Road was used prior to its acquisition. However, what constitutes a "usual use" of Houchin's Ferry Road is informed by the entirety of the circumstances surrounding acquisition of the road, including the anticipated use at time of acquisition as mandated by federal law. In other words, the meaning of the phrase "usual use" cannot simply be ascertained by how Houchin's Ferry Road had been used in the past, but also by how the road *could not* be used according to federal law.

To the extent that Barnett argues that the allowance of travel by horseback on Houchin's Ferry Road by park officials at the time of the conveyance and beyond somehow estops the United States from enforcing Section 2.16(c), his argument lacks merit.

7

It is well established that the doctrine of equitable estoppel is "rarely applicable to governmental actions." As stated by the Supreme Court over seventy-five years ago, "the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law dos not sanction or permit." . . .

. . . Simply put, the government may not be estopped from enforcing the law, even following an extended period of no enforcement or underenforcement.

As stated in [a prior case]:

> An administrative agency charged with protecting the public interest[] is not precluded from taking appropriate action nor can the principles of equitable estoppel be applied to deprive the public of the statute's protection because of mistaken action or lack of action on the part of public officials. Laws unenforced for a long period of time do not necessarily become inoperative. . . .

The Plaintiffs may well have been allowed by the National Park Service to operate their business on national park grounds for many years, but given the substantial, and undisputed, public interest in preserving national parks, the government cannot be estopped from fulfilling its duty to protect the public interest in accordance with specific regulations despite prior failure to enforce those regulations.

*Wash. Tour Guides Ass'n v. Nat'l Park Serv.*, 808 F. Supp. 877, 881-82 (D.D.C. 1992) (emphasis omitted) (internal citations omitted); *see also* Jean F. Rydstrom, Annotation, *Modern Status of Applicability of Doctrine of Estoppel Against Federal Government and Its Agencies*, 27 A.L.R. Fed. 702 (1976 & Supp.) ("In view of the public's right to have the government protect its interest in lands held by the government, . . . it is not surprising that the courts have held in a number of cases that the government could not be estopped by equitable considerations from enforcing that right when the ownership of or rights in public lands were at issue." (citations omitted)). Barnett's argument that people have consistently traveled by horseback on Houchin's Ferry Road without punishment is of no avail. Additionally, accepting Barnett's argument that the government's inaction in prosecuting violators of the regulations evidences the phrase "usual use" as affording the public unfettered horseback travel on Houchin's Ferry Road, would be tantamount to accepting

an estoppel argument. As the U.S. Supreme Court made clear in *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1971), "the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." (citations omitted).

In sum, Barnett is unable to establish a right to unfettered horseback travel on Houchin's Ferry Road so as to abrogate the Magistrate Judge's judgment of conviction. Barnett's conviction will stand.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the judgment of the Magistrate Judge is **AFFIRMED**.

Greg N. Stivers, Chief Judge
United States District Court

April 7, 2020

cc: counsel of record